STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-03-048

O. ARLINE WAECKER,

Plaintiff

v.

PAUL C. FARRAR and
ANDREA FARRAR-ZIMBLE,

Defendants

DECISION AND JUDGMENT
(Title to Real Estate Involved)

## I. NATURE OF CASE

Plaintiff and defendants are owners of adjacent parcels at 46 and 48 Deering Street in Portland. The problem here stems from vague deed descriptions dating back to the heyday of Maine's prohibitionist Neal Dow.[1] The deed does not refer to metes and bounds, or to fixed markers or monuments. This property and others in this historic neighborhood were laid out well before today's explosion of individual transportation and the need for parking of owners' vehicles and part of the vision for urban planning. Owners of the properties prize title to and use of the narrow strips between residential buildings for off-street parking.

The plaintiff seeks a declaratory judgment and claims title by adverse possession and by acquiescence. She also claims trespass and nuisance, and seeks damages as well

---

[1] The basic deed description for plaintiffs' property at 48 Deering Street is:

> A certain lot or parcel of land, with buildings thereon, situated on the southerly side of Deering Street ... bounded and described as follows: northerly by said Deering Street easterly by land of George S. Payson, southerly of land now formerly of Neal Dow, and westerly by land now or formerly of J.S. Winslow. The house on said lot is now numbered 48 on said Deering Street.

*See* Plaintiff's Exhibit 1.

as a permanent injunction preventing defendants from keeping vehicles in the driveway, to restore it to its prior condition, and to refrain from all action that interferes with her use of the driveway.

The defendants denied the essential allegations and counter-claimed for trespass and nuisance.

Both parties seek attorney fees.

## II. BACKGROUND AND DISCUSSION[2]

The plaintiff obtained sole title to the property at 48 Deering Street from her ex-husband, Hans Waecker, as part of a divorce judgment in 1976. She resided at the address from 1966, when she married Hans Waecker, until she moved out in 2003. She retained ownership and continuing familiarity with the property as her daughter and son-in-law lived there after her.

Hans Waecker purchased the property in 1967 to use as his medical office on the first floor and residence on the second and third floors.

The defendants purchased their property in 1995, (Pl. Ex. 4), but they had been lived there as tenants. Their deed is somewhat more specific than plaintiff's. It describes the property at number 46 on the southerly side of Deering Street as:

> Beginning on the southerly side line of said Deering Street at a point in the northwesterly corner of the lot of land conveyed to Charles W. Ford by Henry M. Payson by deed March 22, 1884, . . . which point is two hundred fifty-five (255) feet westerly from the intersection of said southerly said line of Deering Street with the westerly side line of State Street, and in the extension in a northerly direction of the center line of the division wall between the house hereby conveyed and that conveyed to Charles W. Ford; thence westerly by said southerly side line of Deering Street twenty-nine (29) feet, more or less, to a point in the easterly side line of a lot conveyed to Henry M. Payson by William H. Green, et als. by deed dated October 20, 1885 . . . ; thence southerly by said lot conveyed by Green, et al. to Payson one hundred (100) feet, more or less, to land now or formerly

---

[2] To the extent that the court sets out facts, they constitute the court's findings by a preponderance of evidence, unless otherwise noted.

> owned by the heirs of Eben Steele; thence easterly by said Steele land twenty-nine (29) feet, more or less, to the center line of the division wall between the house hereby conveyed and said Ford house extended in a southerly direction; thence northerly by said center line one hundred (100) feet, more or less, to the point of beginning; being the westerly half of a block of two houses and numbered forty-six (46) on said Deering Street.

Essentially, the deed conveys the parcel at 46 Deering Street as 29 feet by 100 feet, a lot that is virtually the same size as the plaintiff's at 48 Deering Street.

The beginning point of 255' west of State Street is fixed. The problem comes with the deed description of an extension of "twenty-nine (29) feet, more or less," westerly on Deering Street. The several surveys in evidence indicate the street frontage to be actually 31 feet. This extends to an area slightly beyond a low granite wall separating the southerly edge of the sidewalk and the front yard at number 46. When the deed description turns southerly it is consistent with a line between the cement walkway adjacent to number 46 and the easterly edge of the old brick driveway. The common boundary between numbers 46 and 48 is a straight line to the rear (southerly end) of the lots.

David Titcomb, a professional land surveyor for more than thirty years, examined the properties and concluded that a 2002 survey by Owen Haskell, Inc., was "most likely correct." (*See* Def. Ex. 2, Pl. Ex. 5b) The court finds that this plan depicts the true boundary between the properties.

The area between the two houses is approximately fifteen feet from wall to wall at its widest, and it narrows to about ten feet where a bay window in the Farrars' property extends into the area between the houses, immediately south of the driveway.

The controversy here arises from cramped quarters, as both parties want to park their cars in the area between the houses.

3

There was brick in the area traditionally used by the Waeckers. Plaintiff's photo exhibits of the family and their vehicles (Pl. Ex. 10 a/b, 11 a/b, 12 a/b) clearly show that they used this area exclusively as their property from the time they moved there. Prior to 2002, no one else, including the owners or residents of 46 Deering Street, used the area as a driveway. That is when the Farrars' started parking there, giving rise to this suit.

Prior to being paved over, a concrete walkway ran from the sidewalk to the area in back of the houses. It was along the side of 46 Deering Street between that building and the brick driveway. Over the years, the Waecker family shoveled snow onto the concrete area and parked their on parts of the walk way. The area was also used when they had guests or when there were on-street parking restrictions.

From the old family pictures, the brick driveway ends a foot or two west of the granite wall, and clearly shows that the grassy buffer strip and part of the cement walkway was used for driveway purposes.

Prior to getting a letter from defendants' counsel in 2002 (Pl. Ex. 36), neither the Farrars' nor their predecessor in title questioned Waeckers' use of the area even though the Farrars were made aware of the potential problem when they purchased the property in 1995.

In the summer of 1985, the brick driveway was paved over with asphalt to far edge of the cement walkway, thus expanding the area that to an observer would appear to be plaintiff's driveway.

Charles McDonald was the roller man on the paving crew and recalls an older man, whom he thought was an inspector, who came out and marked the bottom and top of the driveway. They resurfaced only on "what was there," that is, the area "the man marked with his foot," who said they "could not go beyond that."

4

Richard Stewart Jr., worked for his father's paving company from 1960 until 1971. He was familiar with the driveway because he snow-plowed the area in the early 1970's, but had much difficulty because it was broken up. He later rejoined his brother in the company after his father's death in 1985. He was part of the crew that repaved the driveway in 1985.

Stewart also recalled the neighbor, "the man from next door," who came out to see what they were doing. He put is foot down to show them where the "seam" was and indicated a line. He told them "not to go over it," that to the east was his, and they were "not to touch it." The line went to the slit in the curb at the sidewalk. Stewart and his crew paved to the line demonstrated by the neighbor and the "asphalt driveway is still in the same location." From all appearances the neighbor appears to have been Fred Scribner Jr. who was the trustee of the Emma Scribner Trust, owner of 46 Deering Street.[3]

The plaintiff also complains of trespass and nuisance regarding the defendants' use of the area to park their vehicle and that this use interferes with plaintiff's use of her driveway. (e.g., Def. Ex. 5, 6, 7, 9, and 10; Pl. Ex. 22 – 29, inclusive) This practice began well after they purchased the property. Prior to that, including the time while they were tenants at 46 Deering Street, they had used on-street parking. Even the presence of only one additional vehicle in the driveway means that they have to share some of the paved portion and is at most an inconvenience and not a nuisance. Any trespass upon the driveway area claimed by plaintiff is unintentional and under the defendants' belief

---

[3] After trial, the defendants filed a motion to reopen evidence to offer an additional exhibit found by Christopher Scribner in a file maintained by his father. The letter, dated August 5, 1987, is addressed to plaintiff and raises concerns an "excavation" done on the driveway at 46 Deering Street and that he "understand[s] you are now proposing to do some blacktop work on our property." The letter is dated two years after the pavers said did the work. His directions to the paving crew are most consistent with having occurring after the letter was written. Even if the work was done in 1987, Scribner acquiesced in the work by setting a line that was followed by the paving crew.

5

that they had a right to be there. It did not prevent the plaintiff from using her driveway.

At trial the plaintiff also complained about conditions when the Farrars did repairs to their house in 2005. The repairs lasted two to three weeks during which time red brick dust that fell onto plaintiff's property and it would be carried by the breeze. This made it necessary for plaintiff to keep her windows closed in the summer months. (*See* pl. Ex. 32, 33, 34.) Staging was erected by the workers and for part of the time was located in the narrowest area between the houses adjacent to the common gate entrance leading to the back yards on the south side of the houses. The multi-level staging took up most of the area. (Pl. Ex. 32.) When it was placed closer to the street on the right of defendants' house (Pl. Ex. 33), it was partially on the pavement. This may have been inconvenient for plaintiff, but did not prevent use of the driveway to park a vehicle.

At the upper part of the driveway near the back corners of the houses there is a fence that goes wall to wall. A gate in the middle crosses the common boundary and provides access to the backyard of both homes. There was no evidence as to when or by whom the fence was put there, but it appears to be there as a deterrent to trespassers and people cutting through the yard to get to Congress Street. Access to this area, through the gate, is necessary for owners of both 46 and 48 Deering Street.

### III. SUMMARY

The court finds that the plaintiff has established the necessary elements to establish her claim to the paved area of the driveway by adverse possession; that is the area beginning at a "spike set" on the southerly side of the sidewalk at the common boundary, thence southerly 47.5' (+/-) to a point that is at a line drawn from the corner of each house where the driveway narrows, thence easterly 2.5' (+/-) to the edge of the asphalt, thence northerly 47.5' (+/-) to a point at the southerly edge of the drive way,

thence westerly 2.5' (+/-) to the point of beginning, as depicted on the February 5, 2002 plan by Owen Haskell, Inc.

Plaintiff's claim is established by actual, open, visible, notorious, exclusive hostile and exclusive use and possession of the area, under a claim of right for more than 20 years and with the acquiescence of a prior owner.

The defendants did enter upon plaintiff's property when they were making repairs to their house but there is no evidence of damage beyond the temporary inconvenience and nuisance of brick dust. Such a condition is an inconvience, but necessary nuisance in a compact urban area. There must be some concomitant tolerance of tolerance the neighborhood environment. In fact, at such time as plaintiff may have to make similar repairs to her house, it's highly likely that her contractor will have to go onto defendants' property. Even if it is a trespass or nuisance, it is *de minimis*.

### III. DECISION AND JUDGMENT

The clerk shall make the following entries as the Decision and Judgment of the court:

> **A.** Judgment for plaintiff on her complaint that she has acquired full rights, title and interest, by adverse possession and acquiescence to that portion of the property at 46 Deering Street as described herein and consistent with the plan of Owen Haskell, Inc. dated February 5, 2002.
>
> Therefore, it is ORDERED, ADJUDGED AND DECREED that O. Arline Waecker is the owner of and is vested with full right title and interest in the area at 46 Deering Street, in the City of Portland, as described herein and is set out on the plan of Owen Haskell, Inc. dated February 5, 2002.
>
> **B.** Judgment for defendants on plaintiff's claims for trespass and nuisance.
>
> **C.** Whereas the court has found in favor of the plaintiff on the claim for adverse possession, Count VI of the complaint for prescriptive easement is moot and no ruling is required.

**D**. Judgment for plaintiff on defendants' counterclaim.

**E**.    On plaintiff's demand for injunctive relief, it is Ordered that defendants shall not enter on plaintiff's property as described herein for the purpose of parking or storing any vehicles or other chattels or personal property, except however, all parties and their tenants, guests and assigns are allowed reasonable and necessary access through the gate for entrance to the area behind the houses. It is further Ordered that defendants shall take no action to prevent or interfere with plaintiff's ingress, egress or use of the driveway as defined herein.

The gate shall not be locked at any time unless all parties and persons who have lawful access to the area are provided with a key or combination to any lock or device used to secure the gate.

**F**. No costs or attorneys' fees are awarded.

SO ORDERED [4]

DATED: _March 2, 2007_

Thomas E. Delahanty II
Justice, Superior Court

---

[4] The parties may seek an amendment to this judgment for the purpose of providing a more precise metes and bounds description of that portion of 46 Deering Street as generally described by the court.

F COURTS
and County
3ox 287
ne 04112-0287

NATALIE BURNS ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

COURTS
J County
: 287
04112-0287

ALAN BEAGLE ESQ
BEAGLE & RIDGE
PO BOX 7044
PORTLAND ME 04112